IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                      No. 18-40105-01-JTM

DEVONTE JEMELL STARKS,
    Defendant.

MEMORANDUM AND ORDER

This matter is before the court on defendant Devonte Jemell Starks's Motion in Limine challenging certain evidence of the government. The drug trafficking and conspiracy case arose after two cars were stopped on I-70 on September 17, 2018. According to the submissions by the parties, there were two occupants in each of the cars — a Chevy Impala driven by Starks, with Kevin Scott as passenger; and a black Camry, driven by Lamika Watt, with Toya Avery as passenger. According to the officers on the scene, the cars appeared to both travelling together, and too closely to other vehicles.

The occupants of the cars were interviewed separately. Watt and Avery denied knowing anything about the Impala or its occupants. The women said they had been on a work trip out West, and were returning from Colorado. The investigating officer (Trooper Goheen) smelled marijuana, asked for permission to search the vehicle, Watt

consented, and the officer found a large suitcase in the trunk which (due to its weight) he believed to contain narcotics. Both women were arrested, the car impounded, and the suitcase later found to contain 2 kilograms of fentanyl and 4 kilograms of heroin.

The Impala was stopped six miles away by another officer, Trooper Birney. Goheen told Birney that Turnpike records from September 13 (four days earlier) showed the two vehicles had entered the Kansas Turnpike at almost the same time. Birney asked Starks about this, but Stark denied knowing anything about the Camry. Having found the suitcase in the Camry, Goheen told Birney to detain Starks and Scott.

Starks and Scott were separately interviewed by DEA agents in Russell, Kansas. Starks produced a valid Arizona driver's license, and said he was returning from Phoenix, Arizona to visit his son.

Scott, who presented a valid Ohio driver's license, was much more expansive. He originally denied knowing Avery or Watt, but, after being confronted with the turnpike records, he consented to the agents looking at his cell phone. The phone showed calls to Watt's phone. Scott then said he had been paid $4000 to drive to Phoenix to pick up a load of drugs to transport back to Cleveland, Ohio, that he was going to pay the women for their help. Scott said Starks had no communication with the women and that his fingerprints would not be on the suitcase or the bundles containing the drugs. However, he did say that Starks knew the drugs were in the Camry.

The occupants of the car were later released. Watt and Scott are currently fugitives.

**1. Scott's Statement**

Defendant argues that Scott's statement implicating him is hearsay, and that it is not admissible under Rule 801(d)(2)(E). He contends (Dkt. 37, at 8-9) that the statement could not be in furtherance of the conspiracy because he made it "after being detained."

(Immediately prior to this argument, Starks also notes that under Rule 801(d)(2)(E) a co-conspirator's statements are admissible if the court finds the existence of a conspiracy by a preponderance of the evidence adding in a parenthesis "a point we vociferously contest."

However, this is the only mention defendant makes as to the issue— he makes no argument about the subject and does not discuss the facts relating to the issue. The court finds there is sufficient evidence for a preponderance of the evidence finding. On two separate occasions, four days apart and at separated by hundreds of miles (the Bonner Springs turnpike entrance and near Russell, Kansas) the two cars were observed to be travelling basically in lockstep. Coupled with other evidence (the here uncontested seizure of drugs from the suitcase in the Camry, and the uncontested portion of Scott's statement, that the two cars were in fact travelling together).

The government responds by citing a variety of cases holding that the "in furtherance of a conspiracy element" does not terminate automatically on the basis of an arrest:

> "But 'a conspiracy does not end simply because one conspirator has been arrested,' . . . *United States v. Melton*, 131 F.3d 1400, 1405 (10th Cir. 1997). When a conspiracy is ongoing, statements that relate to 'avoiding detection

by law enforcement personnel' can be in furtherance of the conspiracy. [*United States v.*] *Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995); *see United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988) ('[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception.')." *United States v. Alcorta*, 853 F.3d 1123, 1139 (10th Cir. 2017).

(Dkt. 42, at 11). The government also suggests that the statement may be admissible as part of a conspiracy to obstruct justice:

> A statement made after the original conspiracy ends may still be admissible as a statement made under a separate and distinct conspiracy to obstruct justice. *See, e.g., United States v. Townsley*, 843 F.2d 1070, 1084, modified on other grounds, 856 F.2d 1189 (8th Cir.1988), *cert. dismissed*, 499 U.S. 944 (1991). Statements are admissible under 801(d)(2)(E) even when the particular conspiracy is not charged in the indictment. *United States v. Beckham*, 968 F.2d 47, 51 n. 2 (D.C.Cir.1992); *United States v. Coppola,* 526 F.2d 764, 770 (10th Cir.1975). "'[C]oncealment is sometimes a necessary part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the ... [original] conspiracy.'" *United States v. Esacove*, 943 F.2d 3, 5 (5th Cir.1991).

(Dkt. 42, at 10).

Applying these standards, the government argues that Scott's statements were admissible because Scott was not actually arrested, but released based on his promise to later contact law enforcement. It argues Scott's statement was thus part of a conspiracy to achieve "the main criminal objectives of the conspiracy with the unknown and unindicted co-conspirators" (*id*. at 11) by his false promises of assistance with revealing his Cleveland contacts, "us[ing] his statements to gain his unfettered release," which "was a ruse." (*Id*. at 9).

4

Here, the only conspiracy alleged in the indictment is the conspiracy to transport the fentanyl and heroin found in the Camry – not any larger conspiracy involving Cleveland drug dealers.

The authorities cited by the government are distinguishable. Townsley involved a vote fraud case, in which the court explicitly acknowledged that "[e]fforts to conceal a criminal conspiracy are normally distinct from the conspiracy itself … and not automatically to be treated as a part or extension of that conspiracy." 843 F.2d at 1084. The court held the observed that the case was an exception because "[t]here was ample evidence to establish [a] conspiracy to obstruct justice," including tape recordings that "can only be characterized as coaching [witness] to present a united, fabricated front." *Id*. at 1076. This strong evidence was thus admissible "because [the statements] were made during the course of a conspiracy whose very existence justifies an inference that appellants had something they wanted to cover up, that something being the vote-fraud conspiracy" *Id*. at 1084. In addition to the strength of the evidence, the stressed that both defendants were charged to have participated in both the vote fraud conspiracy and the subsequent obstruction cover-up conspiracy — otherwise, "there would be serious problems with this line of reasoning," the court cautioned. *Id.*

Similarly, in *Williamson*, the court approved the Rule 801(d)(2)(E) of statements designed to help conspirators "avoid detection by law enforcement."53 F.3d at 1520. But Scott was not *avoiding* detection *by* law enforcement, he was *revealing* the underlying drug conspiracy *to* law enforcement.

Here, we have a new conspiracy being proposed by the government — for the first time, in response to the motion in limine — involving Scott's "ruse." But, unlike Townsley, there is no evidence at all that defendant Starks was involved in that "ruse."

The other cases cited by the government are equally inapposite. All of the cited cases involved statements to persons believed to be involved in criminal activity, including undercover officers. *See, e.g.*, *Beckham*, 968 F.2d at 50 (co-conspirator told undercover officer "I only had one [crack rock], but you can get another from my buddy [the defendant]"). And while the cases agree that statements of "concealment" may create a separate conspiracy allowing Rule 801(d)(2)(E) admission, the problem for the government here is that Scott, knowingly speaking to law enforcement officers, *didn't conceal anything* — at least as far as the charged drug conspiracy — he directly stated that Starks knew about the drugs. The additional "ruse" was not any conspiracy that involved Starks.

Accordingly, the statement by Scott implicating Starks is inadmissible under Rule 801(d)(2)(E), because it is tied to a "ruse" which has not been shown to be any conspiracy including Starks. The actual statement that is the target of the motion in limine (that Starks knew about the drugs in the Camry) was not in furtherance of the drug conspiracy alleging transport of fentanyl and heroin, it was contrary to the goals of the conspiracy by revealing Starks' participation to the police. The government has not shown any comparable case supporting admission of such evidence.

Further, the court also finds the evidence to be inadmissible under Rules 401 and 402 as being unreliable. Even if the court adopts the government's "ruse" theory, and views all of Scott's statement (including inculpating Starks) as somehow integral to the get-out-jail "ruse," the entire statement becomes deeply suspect. By the government's own theory, Scott was simply spinning a tissue of lies to obtain his release.

The defendant's *Bruton* argument is not a basis for exclusion. *Bruton* applies to the introduction of statements by a co-defendant who cannot be cross-examined. However, "[t]he Supreme Court has recognized that *Bruton* is inapplicable where the statement is admissible pursuant to a 'firmly rooted hearsay exception.'" *United States v. Holman*, 27 F. App'x 210, 212 (4th Cir. 2001) (quoting *Lilly v. Virginia*, 527 U.S. 116, 124 (1999). *United States v. Patterson*, 713 F.3d 1237, 1247 (10th Cir. 2013); *United States v. Smalls*, 605 F.3d 765, 768 n. 2 (10th Cir.2010).

**2. Evidence that Starks and Scott crossed in Mexico on Sept. 7**

The government apparently has evidence from a border crossing that Starks and Scott entered Mexico on September 7, 2018 the defendant argues that such evidence is improper Rule 404(b) evidence of a prior wrong, and stresses that there is nothing illegal about travelling to Mexico.

The government argues, and the court agrees, that the evidence is not improper Rule 404(b) evidence because it is not evidence of a prior crime or wrong. Rather, it is an incident (which is not a crime in itself) very near to the events a few days later when the

two cars were stopped on I-70 in Kansas. The evidence directly undercuts the stories offered by the participants as to their travels. Accordingly, it should be admitted because it tends to show those statements were false and the participants had knowledge of the drug activity.

**3. Stark's 2015 conviction for drug trafficking**

Defendant makes a similar Rule 404(b) argument with respect to his 2015 Arizona state conviction for drug trafficking. The government acknowledges that such evidence is offered under Rule 404(b), but contends the evidence is admissible to rebut any potential defense that Starks was simply an innocent bystander.

The court concurs. The evidence is relatively recent (only a few years before the present incident) and involves similar criminal activity (drug trafficking).

IT IS ACCORDINGLY ORDERED this 29th day of March, 2019, that the defendant's Motion in Limine is granted in part and denied in part as provided herein.

/s/ J. Thomas Marten  
J. Thomas Marten, Judge